**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MIAN FAROOQ, ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
|       **vs.** ) | Case No. 15 C 6106 |
| ) | |
| PORTFOLIO RECOVERY, LLC and ) | |
| BLATT, HASENMILLER, LEIBSKER & ) | |
| MOORE, LLC, ) | |
| ) | |
|       **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Mian Farooq sued Portfolio Recovery, LLC and Blatt, Hasenmiller, Leibsker, &

Moore, LLC for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e

(FDCPA) and state law by attempting to collect a debt that was not owed. Farooq

accepted defendants' offer of judgment in the amount of $6,001 plus reasonable

attorney's fees to be determined by the Court. The Court entered judgment for $6,001

and directed Farooq to file a fee petition. Farooq has moved for attorney's fees and

costs totaling $13,186.15. For the reasons set out below, the Court awards Farooq fees

and costs in the amount of $11,452.55.

## Background

Farooq filed his complaint on June 10, 2015. He alleged that defendants—a

collection agency and a law firm—attempted to collect a debt he did not owe by suing

him in the Circuit Court of Cook County. Farooq successfully defeated the debt

collection suit after a bench trial and then filed this action.

Defendants filed a motion to dismiss Farooq's complaint on October 13, 2015, arguing, among other things, that his success in state court did not support a claim under the FDCPA against defendants. This Court denied the motion without ordering briefing, finding that Farooq had clearly stated a claim for relief under the FDCPA. Defendants then filed answers and affirmative defenses.

On October 21, 2015, defendants served an offer of judgment in the amount of $2,501 plus reasonable attorney's fees and costs to be determined. Farooq rejected the offer. On November 6, 2015, defendants made another offer of judgment, this time in the amount of $6,001 plus reasonable attorney's fees and costs. Farooq initially rejected the offer but then accepted it. Between his initial rejection and later acceptance of the second offer, Farooq's attorneys prepared and served discovery requests. On November 24, 2015, this Court entered judgment in favor of Farooq for $6,001, plus attorney's fees and costs to be determined. Farooq later filed the present fee petition.

Farooq seeks fees for three attorneys: Michael Wood, Bryan Thompson, and Andrew Finko, at hourly rates of $327, $327, and $450, respectively. Altogether, Wood, Thompson, and Finko say they worked 38 hours on this case. Farooq seeks compensation for their time and for expenses associated with the filing of the case, service of summons, and production of transcripts. In total, Farooq requests $11,682.90 in attorney's fees and $489.55 in expenses, plus another $1,013.70 related to the reply on the fee petition.

## Discussion

A plaintiff who prevails under the FDCPA is entitled to reasonable attorney's fees.

*Schlacher v. Law Offices of Phillip J. Rotche & Assoc.*, 574 F.3d 852, 856 (7th Cir. 2009). In this case, Farooq is a prevailing party; defendants do not argue otherwise.

The fee applicant bears the burden of establishing entitlement to an award and the appropriate attorney time expended as well as the attorney's appropriate hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983). The product of the reasonably-expended hours and the hourly rates is commonly called the "lodestar." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

The hourly rate used in calculating the lodestar is determined based on the market rate for counsel's services. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). The party seeking fees has the burden of proving the attorneys' market rates. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). The presumptive market rate is the rate the attorney could earn for comparable work from fee-paying clients. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). A fee petitioner may demonstrate an attorney's market rate by showing that clients have actually paid that rate. *Cintas Corp. v. Perry*, 517 F.3d 459, 469-70 (7th Cir. 2008). Alternatively, the appropriate market rate can be determined by the rate that lawyers of similar ability and experience in the community normally charge for similar cases. *Gautreaux v. Chi. Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). Once the fee petitioner provides evidence establishing the attorneys' market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded. *Id.* at 659-60.

Hours not reasonably expended are excluded from the lodestar. *Spegon*, 175 F.3d at 550. Upon determining the lodestar, the court may then increase or decrease it based on, among other things, the degree of success obtained by the party seeking

3

fees. *Hensley*, 461 U.S. at 436.

**1.      Reasonableness of the requested rates**

Farooq requests hourly rates of $327 for Wood and Thompson and $450 for

Finko.  He argues that these rates are reasonable because they are the attorneys'

actual billing rates; they have been paid these rates in prior actions; and the rates are

below the median rates for attorneys in this area with comparable practices and

experience.

Farooq's arguments and supporting documents are virtually the same as those

made by the plaintiff less than a year ago in *Stockman v. Global Credit and Collection*

*Corp.*, No. 14 C 6862, 2015 WL 4999851 (N.D. Ill. Aug. 21, 2015), in which Wood and

Thompson were the plaintiff's counsel.  There, this Court decreased Wood's and

Thompson's requested hourly rates from $327 to $300.  The Court concluded that the

plaintiff had not met his burden of proof on the higher requested rates.  The plaintiff

relied primarily on the United States Consumer Law Attorney Fee Survey Report for

2013-2014, declarations from the attorneys and a client named Candice Cunningham,

and previous cases in which they had been awarded their requested rate.  The Court

found the Fee Survey was unreliable and that Cunningham's declaration did not

establish that she had actually paid the requested amount.  This Court also stated that

the fact that other judges in this district had granted the requested rates was but one

factor to be weighed in the inquiry.

Most of the Court's reasoning in *Stockman* applies here as well.  Plaintiff's

counsel continue to rely upon the same declaration by client Cunningham, despite the

Court's detailed explanation in *Stockman* about why it was unpersuasive.  *See id.* at *3

("[A]t most, the[ Cunningham documents] evidence a client's intent to *eventually* pay Wood and Thompson $327 per hour"). To be sure, the Court relied partly on the fact that the Cunningham declaration had been signed a matter of days before the fee petition was submitted in that case. But now nearly a year has passed, and if Cunningham had actually paid the amount stated in her declaration, one would expect counsel to submit evidence showing that, particularly after the Court ruled as it did in the *Stockman* case. In short, like the plaintiff in *Stockman*, Farooq has offered no evidence that Cunningham actually paid the requested rates. In addition, there is no real indication that Cunningham's case was similar to Farooq's. For these reasons, the Court does not give her declaration any significant weight.

The Court likewise adheres to its view that reliance on the Fee Survey is problematic. As the Court noted in *Stockman*, "the Seventh Circuit has observed mixed opinion within the legal community regarding the utility of reliance in individual cases on reports like the Fee Survey." *Stockman*, 2015 WL 4999851, at *4 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649-52 (7th Cir. 2011)). In addition, the Fee Survey is not particularized by subject matter or the ability of the attorney. Instead, it averages the rates charged by all attorneys in a particular geographic area. As a result, it has little value in determining the reasonableness of a particular attorney's rates

Finally, the fact that other judges have awarded counsel's requested rates is only one factor to be considered in assessing the reasonableness of an attorney's requested rate. Many of the cases Farooq cites were unopposed fee settlements, where there was no meaningful assessment of the requested rates. In addition, Farooq has made no attempt to demonstrate the similarity between the other cases and this one.

Farooq attempts to distinguish this case from *Stockman* by arguing that an attorney's reasonable rate may increase over time. Specifically, he argues that the Court should increase the hourly rate from the $300 it settled on last year based on "the increase in experience of both attorneys [Wood and Thompson] as well as general increase in cost for legal services." Pl.'s Mot. at 8. There is no question that an attorney's reasonable hourly rate may, and likely will, increase over time. *See Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3 (N.D. Ill. Aug. 15, 2013) ("Indeed, hourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney. . . ."). But less than a year has gone by, and there has been no inflation to speak of. More particularly, Farooq's attorneys have not shown that the passage of time should result in an increase over the rates the Court approved in the *Stockman* case.

In their response, defendants argue that the Court should reduce Farooq's attorneys' hourly rates to $200 for Wood and Thompson and $300 for Finko. But they do not offer any meaningful rationale to support these figures; rather, they seemed to have pulled them out of the air, with a rather loose comparison to the hourly rates of another attorney in a FDCPA case. A decrease of the hourly rates the Court approved for Wood and Thompson a year ago would suggest a downgrade in their skill level, which the evidence does not support.

After considering the relevant factors, the Court once again finds that the reasonable hourly rate for Wood and Thompson is $300. The Court finds that Finko's requested rate of $450 is insufficiently supported and will, for the reasons stated above, reduce his rate by a similar percentage as its reduction of the rates of Wood and

Thompson, specifically, to $415.

**2.      Hours reasonably expended**

Having determined the appropriate hourly rates, the Court next examines the

reasonableness of the requested attorney time.  A fee petitioner is expected to exercise

"billing judgment" by winnowing down the time actually expended to the time reasonably

expended.  *See Spegon*, 175 F.3d at 552.  To the extent that the petitioner does not

exercise billing judgment, the Court may exclude time unreasonably spent.  *Id.* at 553.

"In doing so, the court should disallow not only hours that would not normally be billed to

a paying client, but also those hours expended by counsel on tasks that are easily

delegable to non-professional assistance."  *Id.*  Tasks that fall under the latter category

may include administrative tasks like updating case lists and calendar entries, among

other things.  *Id.*

Farooq's attorneys have included in their fee request time for several

administrative tasks.  In particular, they billed a total of 1.6 hours related to calendar

entries, mailing summons, and requesting transcripts at counsels' hourly rates.  *See*

*Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 886 (S.D. Ill. 2013)

(finding tasks such as mailing documents and updating calendar deadlines

administrative and not compensable).  The Court will reduce Farooq's request by this

amount.

Defendants argue that Farooq's counsel's multiple discussions of settlement with

Farooq should not be compensated because they were duplicative and engineered to

extend litigation.  They argue that the Court "should not award plaintiff's counsel for

poorly servicing their client."  Defs.' Resp. at 8.  But this time does not represent poor

service by Farooq's attorneys.  To the contrary, the rejection of the first settlement offer resulted in a much higher second offer of judgment.  And Farooq eventually accepted that offer.  Neither defendants nor the Court know the particulars of the discussions between Farooq and his attorneys about the offers of judgment.  But the most reasonable inference is that counsel advised Farooq to reject the first offer and, at least eventually, to accept the second.  And if that is what happened, then counsel did not render inadequate service to Farooq.  One way or another, the Court sees no appropriate basis to reduce counsel's time spent advising Farooq about settlement.

Defendants also argue that the time counsel spent drafting and serving discovery requests is not compensable because the requests were premature.  Farooq received the second offer of judgment before counsel served the discovery requests, and he accepted it several days afterward.  Farooq notes that the case did not come to a stop based on the possibility of settlement and that he had to pursue the litigation until there was a resolution.  This may be true in the abstract, but it is not what took place here. The most reasonable inference from the chain of events is that the preparation of the discovery requests just before accepting the offer of judgment had no purpose other than to run up counsel's fees.  For this reason, the Court decreases the lodestar by 0.7 hour billed at the $300 rate.

Finally, Farooq seeks compensation for the time spent drafting the initial motion for fees plus an additional 3.1 hours spent preparing the reply brief.  Defendants take issue with awarding fees for work related to fee petition.  They characterize the reasonable lodestar as "pre-petition attorney's fees and costs," which would appear to be another way of saying that time spent on the fee petition is not compensable.  To the

8

contrary, there is no question that time spent preparing a fee petition can be compensable to the extent that it is not unreasonable compared to the time spent on the merits. *See Spegon*, 175 F.3d at 554 (affirming the district court's reduced award of attorney's fees for time spent preparing the fee request); *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1998) (same). As such, the Court considers the reasonableness of the requested fee dispute hours.

In *Ustrak*, the Seventh Circuit held that the time spent on the fee dispute—15 minutes per every hour of work on the merits—was "the tail wagging the dog, with a vengeance." *Ustrak*, 851 F.2d at 987. Based on that unreasonable proportion and other factors, the Seventh Circuit affirmed the district court's two-third reduction of the fee dispute hours. Here, counsel designates 7.6 of its requested 38 hours as time spent litigating the fee dispute. That represents about the same relative proportion of fee-petition-to-merits time that the Seventh Circuit found excessive in *Ustrak.* The comparison, however, is unfair: the *Ustrak* case was litigated far longer than this one, and the attorney time spent on the fee petition exceeded 100 hours. There is a certain base amount of time needed to prepare any brief, not to mention any two briefs (the fee petition and the reply), and the time claimed here is not out of proportion to the very short time spent on the litigation or to the degree to which defendants have opposed the fee petition. The Court approves the amount requested.

**3.    Summary**

In sum, the Court reduces the attorney's hourly rates from $327 to $300 and from $450 to $415 and strikes the attorney time for drafting the discovery request (0.7 hour) and handling administrative tasks (1.6 hours). Taking these reductions into account, the

9

Court approves 33.5 hours of fees at a rate of $300, 2.2 hours of fees at a rate of $415, and $489.55 in costs, for a final amount of $11,452.55.

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for attorney's fees and costs [dkt. no. 39], awarding plaintiff attorney's fees and costs in the total amount of $11,452.55.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 19, 2016